**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Civil Action No. 1:26-cv-20111-Becerra/Torres**

MIAMI LEGAL RESOURCES, LLC and ROSSDALE CLE, INC.,

Plaintiffs,

v.

BEEHIIV INC., a New York corporation; DAN KRENITSYN,

Defendants.
_______________________________________________/

**BEEHIIV INC.'S MOTION TO DISMISS**

This is one of two lawsuits filed by the same counsel against beehiiv Inc. ("beehiiv") premised on the same baseless theory: that a customer who abused beehiiv's platform to send hundreds of thousands of marketing emails in breach of beehiiv's Terms of Service ("Terms") can convert its own misconduct into a $104 million windfall. This action is particularly baseless. Plaintiffs failed to serve either Defendant in the ten months since filing suit, and continue to pursue claims against Daniel Krenitsyn ("Krenitsyn") despite Judge Torres's express finding that Krenitsyn was fraudulently joined because he did not work for beehiiv during the relevant period (among other reasons). Rather than dismiss these non-viable claims, Plaintiffs have persisted in pursuing this action, forcing beehiiv to incur unnecessary litigation expenses to defend against claims that should never have been brought. Each of these defects independently warrants dismissal. The Court should dismiss Plaintiffs' claims with prejudice and permit beehiiv to seek recovery of its attorneys' fees and costs.

beehiiv is a New York-based email newsletter and website hosting service provider. Plaintiffs admit that they sought out beehiiv's service, created an account, uploaded lists of

400,000-plus recipients, and then directed beehiiv's system to send mass commercial emails to that list. Notice of Removal Ex. B ¶¶ 19-23, ECF 1-2 (Amended Complaint ("FAC")). To stop abuse of its platform, beehiiv terminated Plaintiff Rossdale's account for violating beehiiv's policies prohibiting marketing emails and spam. *See id.* ¶ 47 (acknowledging that beehiiv terminated Plaintiffs' account).

Plaintiffs then sued beehiiv for $104,250,000 in statutory damages, asserting that beehiiv violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and state torts because "Plaintiffs' commercial emails" contained unsubscribe links that allegedly did not work under "email marketing law." *Id.* ¶¶ 30-31, 39. But the only marketing law identified in the FAC is the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, *id.* ¶ 37, which imposes the relevant obligations on email initiators—not service providers engaged in routine conveyance—and expressly preempts state laws regulating commercial email.

The FAC should be dismissed for multiple, independent reasons. ***First***, Plaintiffs failed to serve either Defendant within the time required by Rule 4(m). ***Second***, the Court lacks personal jurisdiction over beehiiv, a Delaware corporation headquartered in New York, and Plaintiffs' claims do not arise from any Florida-directed conduct by beehiiv. ***Third***, Plaintiffs' FDUTPA claim fails because the FAC identifies no actionable misrepresentation, does not plausibly allege a CAN-SPAM violation by beehiiv, and attempts to enforce federal email marketing requirements through state laws—despite CAN-SPAM's limited private right of action. ***Fourth***, Plaintiffs' negligence claim is time-barred and independently fails because beehiiv owed no legal duty to ensure Plaintiffs' compliance with email marketing laws, and the alleged misconduct arises entirely from the parties' contractual relationship. The claims for

injunctive and declaratory relief likewise fail because they are not supported by any viable underlying cause of action.

While Plaintiffs cannot recover from beehiiv under CAN-SPAM, the statute expressly authorizes beehiiv to seek statutory damages of up to $25 or $100/email from Plaintiff Rossdale for abusing its service to disseminate spam. 15 U.S.C. § 7706(g)(3). If this case proceeds past the pleading stage, beehiiv will bring counterclaims against Plaintiff available under CAN-SPAM, breach of contract, and other laws—for each of the 417,000-plus emails Plaintiff admits it distributed. The Court should dismiss the FAC with prejudice.

## FACTUAL BACKGROUND

### I. Plaintiffs' Allegations

beehiiv is a newsletter publishing platform that allows businesses and individuals to send email newsletters. FAC ¶ 8. The FAC admits that beehiiv is a service provider that offers a "system" and "service" its customers can use to send emails. *Id.* ¶¶ 8, 14, 16.

Plaintiff acknowledges beehiiv is incorporated outside Florida. *Id.* ¶ 3. The FAC nonetheless conclusorily asserts that the Court has personal jurisdiction over beehiiv because "Defendants sent emails to Plaintiff knowing that the Plaintiff is located in Miami-Dade County, Florida," "has large number of business operations" in Florida, obtained a certificate of authority from the Florida Department of State to transact business in Florida. *Id.* ¶ 5. The FAC, however, admits that Plaintiff approached beehiiv for its services, *see id.* ¶¶ 19-20, and only references Krenitsyn as a beehiiv employee in Florida, *id.* ¶ 5. The allegation that beehiiv had obtained a Florida certificate of authority was false and not supported by any factual allegations. Decl. of Vu Ha Nguyen ("Nguyen Decl.") ¶ 5. Despite repeatedly referring to "Plaintiffs," the FAC identifies only one beehiiv account, and the incorporated exhibits identify only Rossdale

(not Miami Legal Resources ("MLR")) as the accountholder. *See* FAC Exs. A, C–E. The FAC alleges no facts supporting that MLR independently used beehiiv's services or suffered any resulting injury.

Plaintiffs allege that they opened a beehiiv account on or about September 22, 2023, paid a total of $3,077.16 for the service, and uploaded a list containing more than 400,000 email recipients.[1] FAC ¶¶ 19-21, 25, 70. Using beehiiv's system, Rossdale sent its own "commercial message/newsletters" to approximately 417,000 recipients before beehiiv terminated the account on December 1, 2023 for violating its Terms. *Id.* ¶¶ 26-27; *see also id.* ¶ 47. Plaintiffs allege the recipients could not unsubscribe after the account was terminated, but identify no recipient who attempted to unsubscribe and was unable to do so. *Id.* ¶¶ 38-42. They also claim entitlement to unsubscribe records, without identifying any law requiring beehiiv to preserve or provide them. *Id*. ¶¶ 50, 58, 60. Relying on CAN-SPAM as the only identified email marketing law, Plaintiffs demand $104,250,000 under FDUTPA—$250 for each of the 417,000 emails—even though FDUTPA provides no such statutory damages. *Id*. ¶¶ 30, 37–39.

The FAC also names Krenitsyn as a co-defendant and alleges that as beehiiv's Chief of Staff, he was responsible for ensuring legal compliance. *Id.* ¶¶ 3, 18, 59. But the FAC acknowledges that he did not hold that position during the relevant period, *id.* ¶ 36, and attempts to incorporate a cropped LinkedIn profile omitting that he did not join beehiiv until March 2025—well after the alleged misconduct, *see id*. Ex. F. The FAC identifies no specific act or omission by Krenitsyn.

---

[1] In the event this case proceeds to discovery (which it should not), records will show that beehiiv already refunded this amount via a chargeback that Plaintiff directly requested.

Based on these allegations, Plaintiffs allege (1) violation of FDUTPA, (2) negligence, (3) injunctive relief, and (4) a declaratory judgment.

## II. Procedural History

On December 14, 2025, Plaintiffs initiated this action and sought $99 in small claims court. Notice of Removal ¶ 1, ECF 1. One week later, they amended their complaint to demand $104 million and added Krenitsyn as a co-defendant. FAC ¶¶ 4, 39. Neither Defendant has been properly served.

beehiiv removed the action on January 8, 2026. On August 20, Judge Torres denied Plaintiffs' Motion to Remand, finding diversity and federal question jurisdiction. On diversity jurisdiction, Judge Torres held that Krenitsyn was fraudulently joined as "the record shows that Plaintiffs lack a viable claim against Krenitsyn under Florida law." Order Denying Remand at 10. On federal question jurisdiction, Judge Torres concluded that "Plaintiffs have attempted to plead a CAN-SPAM Act case as a FDUTPA case," because the duties Plaintiffs seek to enforce derive from CAN-SPAM. *Id.* at 17-20. Plaintiffs did not object to that order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). It must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. While the court takes the plaintiffs' factual allegations as true, "conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## ARGUMENT

### I. After Ten Months, Plaintiffs Never Served beehiiv or Krenitsyn

Plaintiffs' FAC must be dismissed because Plaintiffs never served beehiiv in the ten months since it commenced this matter. Florida's substituted service statute requires: (1) due diligence to attempt personal service, (2) prompt notice and delivery of process, and (3) a timely affidavit of compliance. FLA. STAT. § 48.161. "[B]ecause statutes authorizing substituted service are exceptions to the general rule requiring a defendant to be served personally, due process requires strict compliance with their statutory requirements." *Torres v. Arnco Const., Inc.*, 867 So. 2d 583, 586 (Fla. Dist. Ct. App. 2004).

First, Plaintiffs made no attempt to personally serve beehiiv despite readily available addresses.[2] Florida requires a plaintiff seeking substituted service to make a diligent inquiry and an honest, conscientious effort to effect personal service. FLA. STAT. § 48.161(4)(a)-(c). Even multiple attempts at personal service may not suffice. *Rebalko v. Atallah*, 413 So. 3d 170, 173 (Fla. Dist. Ct. App. 2025). Plaintiffs made no such effort. beehiiv's New York address appears

---

[2] Plaintiff also failed to serve Krenitsyn. Plaintiff did not attempt personal service on Krenitsyn, despite alleging he is an in-state defendant. Plaintiff also cannot rely on substituted service because Krenitsyn is not an out-of-state defendant and there is no evidence he concealed his whereabouts. Even if substituted service was available, however (it is not), Plaintiff failed to meet the requirements. First, while Plaintiffs on December 23 appear to have caused a summons to "Dan Krenitsyn c/o Secretary of State" to be filed, Plaintiffs never filed an indication of acceptance by the Secretary of State or a "Notice of Filing of Letter" mailed to Krenitsyn. This three-month delay fails the "forthwith" requirement under Florida Statute § 48.161. *See, e.g.*, *Par. Mortg. Corp. v. Davis*, 251 So. 2d 342, 343-44 (Fla. Dist. Ct. App. 1971) (finding 37-day delay too long); *Crystal Springs Partners, Ltd. v. Michael R. Band, P.A.*, 132 So. 3d 1230, 1231 (Fla. Dist. Ct. App. 2014) (same, as to 42-day delay). Second, Plaintiffs did not file an affidavit of compliance.

online in its publicly available Terms, and Plaintiffs agreed to the Terms when creating their account. Request for Judicial Notice ("RJN") Ex. A.

Second, Plaintiffs have not demonstrated compliance with Florida's substituted service requirements. There is no evidence that they even served the Florida Secretary of State, obtained confirmation of acceptance, or mailed process to beehiiv. FLA. STAT. § 48.21. Nor did they file the required affidavit of compliance within 40 days. FLA. STAT. § 48.161(3). These defects independently render substituted service ineffective. Indeed, Florida courts routinely dismiss complaints where the plaintiff fails to meet these requirements. *See, e.g.*, *Hanna v. Millbyer*, 570 So. 2d 1087 (Fla. Dist. Ct. App. 1990); *Wise v. Warner*, 932 So. 2d 591, 593-94 (Fla. Dist. Ct. App. 2006).

Third, dismissal is warranted under Rule 4(m). Plaintiffs had 90 days after removal to serve the complaint. *See SDPS, Inc. v. GeoVera Advantage Ins. Co., Inc.*, No. 6:17-cv-952, 2017 WL 10058557, at *3 (M.D. Fla. July 24, 2017). More than nine months have passed since removal, and Plaintiffs have not effectuated service. This warrants dismissal. *Stone v. Lustig*, No. 1:19-CV-22485-KMM, 2020 WL 13663064, at *2 (S.D. Fla. Jan. 15, 2020) (Becerra, M.J.), *report and recommendation adopted*, No. 1:19-CV-22485-KMM, 2020 WL 13663063 (S.D. Fla. Jan. 31, 2020) (recommending complaint be dismissed because of failure to timely serve).

## II. The Court Does Not Have Personal Jurisdiction Over beehiiv

The Court lacks personal jurisdiction over beehiiv, a Delaware corporation headquartered in New York. *See* Nguyen Decl. ¶ 2. Personal jurisdiction requires compliance with Florida's long-arm statute and due process. *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 722 F. Supp. 3d 1296, 1308 (S.D. Fla. 2024). Once a defendant submits a legally sufficient affidavit contesting jurisdiction, the burden shifts to the plaintiff. *Id.*

Here, beehiiv submits a sworn declaration refuting any factual basis for personal jurisdiction. The declaration establishes that beehiiv has no office, mailing address, servers, equipment, or other physical assets in Florida; has no Florida bank accounts; has never initiated litigation in Florida; and was not registered, licensed, or taxed in Florida prior to September 2026. Nguyen Decl. ¶¶ 3-7. Its technical infrastructure is located in Northern Virginia. *Id.* ¶ 6. Only one of the 45 full-time employees during the September to December 2023 period resided in Florida, and only two out of the approximately 107 full-time employees at the time of filing resided in Florida. *Id.* ¶ 8. As of December 2023, only approximately four percent of customers accounting for approximately five percent of revenue were from Florida, and beehiiv does not engage in Florida-targeted advertising. *Id.* ¶¶ 10-11. The allegedly offending emails were sent by Plaintiff Rossdale using Plaintiff's own account and recipient list. *Id.* ¶ 14. These facts are further confirmed by beehiiv's Terms, which mandate that all disputes be brought in the City and County of New York. RJN Ex. A. The burden thus shifts to Plaintiffs.

**A. beehiiv Is Not Subject to Specific Jurisdiction in Florida**

*1. beehiiv is not "carrying on business" in Florida, and Plaintiffs' claims do not arise from any Florida business activity*

This Court does not have specific personal jurisdiction over beehiiv in this matter.[3] Florida's long-arm statute confers specific jurisdiction where both a defendant is "operating, conducting, engaging in, or carrying on a business or business venture in this state"—and the cause of action arises from that activity. FLA. STAT. § 48.193(1)(a)(1). "Carrying on business" requires more than isolated activity and instead "a general course of business activity in the state for pecuniary benefit." *Wrapapan, LLC v. Elson*, 322 So.3d 684, 687 (Fla. Dist. Ct. App. 2021). Courts will consider: "(1) the presence and operation of an office in Florida; (2) the possession

[3] The Court also does not have general jurisdiction over beehiiv.

and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 784 (11th Cir. 2014).

beehiiv maintained and maintains no Florida office, infrastructure, or Florida-directed operations, and derives only a small minority of its revenue from Florida customers. Nguyen Decl. ¶¶ 3-13. Courts have found comparable or greater contacts insufficient as a matter of law. *See, e.g.*, *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (no Florida office, no Florida licensure, less than five percent revenue from Florida clients); *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) (only seven percent of sales derived from Florida).

Nor do Plaintiffs' claims arise from any Florida-directed business activity. The claims challenge beehiiv's national platform design and website representations, neither of which was directed specifically at Florida. *See* FAC ¶¶ 13-17, 22-23, 27-29, 39-40, 63-66. Those alleged practices would exist regardless of Plaintiff Rossdale's location, and Plaintiffs' Florida residence cannot supply the required nexus.

*2. Plaintiffs fail to allege a tortious act committed in Florida*

Plaintiffs cannot establish jurisdiction under the long-arm statute's tortious act provision. FLA. STAT. § 48.193(1)(a)(2). Where the operative conduct occurred elsewhere, Florida consequences alone do not establish that a tort was committed in Florida. *See, e.g.*, *Korman v. Kent*, 821 So. 2d 408, 410-11 (Fla. Dist. Ct. App. 2002); *Regent Grand Mgmt. Ltd. v. Tr. Hosp. LLC*, 2019 WL 1112553, at *8 (S.D. Fla. Jan. 9, 2019) (same, where the alleged conduct occurred outside Florida and the only connection here was downstream harm). Here, the alleged misconduct concerns beehiiv's platform design and nationwide website representations, not

conduct directed at Florida. *See* FAC ¶¶ 13-16, 19-23, 63-66. Plaintiff Rossdale's unilateral decision to use the platform in Florida does not transform those alleged acts into Florida torts.

**B. Due Process Independently Bars Jurisdiction**

Due process independently bars jurisdiction. Plaintiffs must establish that beehiiv purposefully availed itself of Florida, that their claims arise out of or relate to those contacts, and that exercising jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985). beehiiv has no Florida-directed operations or infrastructure, and its limited Florida customer base and remote employees do not establish purposeful availment. *See, e.g.*, *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167; *Parks v. LoadStop, Inc.*, 2024 WL 4452946, at *5 (S.D. Tex. Apr. 22, 2024) (no Florida office, no Florida licensure, less than five percent revenue from Florida clients); *Esslinger v. Endlink, LLC*, 2023 WL 3931505, at *6 (N.D. Ga. Apr. 13, 2023) (only seven percent of sales derived from Florida). Nor can Plaintiffs' Florida residence or alleged in-state harm alone establish minimum contacts. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

**III. <u>Plaintiffs Fail to State a Claim Under the FDUTPA</u>[4]**

**A. The FAC Falls Far Short of Rule 9(b)'s Heightened Pleading Requirement**

*1. The FDUTPA claim sounds in fraud*

Plaintiffs' FDUTPA claim sounds in fraud and therefore must satisfy Rule 9(b). Rule 9(b) applies when a FDUTPA claim alleges a unified course of fraudulent conduct and relies on that conduct as the basis for relief, regardless of whether the plaintiff labels the conduct fraudulent. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293-96 (11th Cir. 2025). At its core,

[4] Krenitsyn was never served. *See supra* at 6 n.3. In any case, the deficiencies that require dismissal of all the claims against beehiiv also apply equally to Krenitsyn.

"fraud targets . . . 'misrepresenting or concealing material facts.'" *Id.* at 1295. The Eleventh Circuit in *Pop*, for example, held that a FDUTPA claim sounded in fraud where social media influencers allegedly promoted a product without disclosing their relationship to the manufacturer, inducing the plaintiff to purchase it. *Id.* The court emphasized that the plaintiff's decision to characterize his theories as a "deceptive act" or an "unfair practice" did not prevent Rule 9(b) from applying. *Id.* at 1296 n.10.

Here, Plaintiffs' FDUTPA claim plainly sounds in fraud because it rests on allegations that beehiiv made materially false representations about its platform to induce Plaintiffs to purchase its services. The FAC alleges that beehiiv made "false statements and omissions" concerning the usefulness of its newsletter and marketing system, FAC ¶ 72, that those representations were material and intended to deceive Plaintiffs, *id.* ¶¶ 74-75, and that Plaintiffs were deceived into paying for an allegedly defective service, *id.* ¶¶ 56, 75. Indeed, Plaintiffs expressly identify beehiiv's "materially false statements and omissions" as the conduct constituting "unfair, unconscionable, and deceptive practices" under the FDUTPA. *Id.* ¶ 74. Rule 9(b) thus applies.

2. *The FAC indisputably fails the Rule 9(b) standard*

The FAC does not come close to meeting Rule 9(b)'s particularity requirement. A plaintiff alleging fraud "shall" allege "the who, what, when[,] where, and how" of the fraudulent conduct. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). At a minimum, the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Here, the FAC generically references false statements about beehiiv's platform without identifying any specific misrepresentation concerning CAN-SPAM compliance. FAC ¶¶ 72, 75. Worse still, the only statements Plaintiffs actually identify are quintessential puffery, namely website slogans such as "[e]verything you need to write, send, and expand your audience" and "beehiiv is the only platform you'll need." *Id.* ¶¶ 13–15. These generalized, nonquantifiable statements are not actionable. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1311 (11th Cir. 2010). In addition, the FAC fails to allege when or where Plaintiffs encountered the statements or how they were possibly misled by such generalized statements. Plaintiffs' FDUTPA claim should be dismissed.

**B. Plaintiffs Do Not Identify Any Deceptive Statements Under Rule 12(b)(6)**

Even apart from Rule 9(b), the FAC also does not state a claim for relief under Rule 12(b)(6) because it does not allege that beehiiv made any statements that were deceptive. To make out a FDUTPA claim, the plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). At minimum, the complaint must specify the misrepresentations at issue. *See, e.g.*, *Blackhawk Yachting, LLC v. Tognum Am., Inc.*, 2013 WL 12199875, at *4 (S.D. Fla. Apr. 23, 2013).

First, the FAC identifies no representation that beehiiv would comply with email marketing laws or preserve unsubscribe data. As discussed above, the only specific statements Plaintiffs identify are inactionable puffery, not actionable representations about beehiiv's services. *See supra* § III.A.2. Second, to the contrary, beehiiv's Terms expressly prohibited newsletters from transmitting or procuring the sending of any advertising or promotional content.

*See* RJN Ex. A, at 3 (beehiiv's Terms, which also stated that content "must not . . . [i]nvolve commercial activities or sales").

Third, the FAC does not plausibly allege that beehiiv engaged in an unfair practice by failing to provide unsubscribe records. Plaintiffs identify no independent legal obligation to preserve or provide those records (there is none). Fourth, their assertion that the records were inaccurate is unsupported by allegations that any recipient actually attempted to unsubscribe. FAC ¶¶ 32–36. The FDUTPA claim therefore fails under Rule 12(b)(6).

**C. The FAC Fails to Allege That beehiiv Violated CAN-SPAM**

*1. beehiiv did not "initiate" messages under CAN-SPAM*

Plaintiffs allege that beehiiv violated FDUTPA by allegedly not providing a functioning unsubscribe link in emails sent by Plaintiff, but this claim fails as a matter of law. CAN-SPAM provides that it is unlawful for "any person to initiate" the transmission of a commercial email "that does not contain a functioning return electronic mail address or other Internet-based mechanism" that allows the recipient to opt out of future commercial emails from the sender. 15 U.S.C. § 7704(a)(3)(A). The statute defines "initiate" to mean "to originate or transmit such message or to procure the origination or transmission of such message." *Id.* § 7702(9). Critically, that definition expressly excludes from "initiate" the routine conveyance of commercial emails. *Id.* An entity is engaged in "routine conveyance" if it handles "the transmission, routing, relaying, handling, or storing, through an automatic technical process, of an electronic mail message for which another person has identified the recipients or provided the recipient addresses." *Id.* § 7702(15). Indeed, Judge Torres identified this precise distinction as central to the dispute, explaining that CAN-SPAM "limits the unsubscribe link requirements to

those who initiate commercial messages" and excludes entities engaged in the routine conveyance of commercial emails. Order Denying Remand at 22.

The FAC's allegations establish Plaintiff Rossdale—not beehiiv—"initiated" the emails in question and thus beehiiv is not subject to this CAN-SPAM provision. Plaintiffs repeatedly admit that the accountholder (Rossdale) initiated the emails in question: "On or about Sept. 22, 2023," the FAC states, "Plaintiffs opened an account with Defendants for Defendants to send and/or cause to be sent Plaintiffs' commercial messages to certain recipients." FAC ¶ 20. Plaintiffs then aver that the same day, they began sending emails to those hundreds of thousands of recipients. *Id.* ¶¶ 25-26.

While the FAC self-servingly characterizes beehiiv as "email[ing] and/or caus[ing] to be emailed" the messages in question, it is clear from the allegations themselves that Plaintiffs initiated the messages. *Id*. For example, the FAC repeatedly and exclusively refers to the September through December 2023 emails as "Plaintiffs' commercial message/newsletter." *Id.* ¶¶ 20, 22, 23, 25-28. The FAC also makes clear that beehiiv's only role was as a service provider, with Plaintiffs repeatedly observing that beehiiv provided the email newsletter "system" or "service" for Plaintiffs to use, *id.* ¶¶ 20-22, 24-27, and advertised "[e]verything ***you*** need to write, send, and expand ***your*** audience, all in one place," *id.* ¶ 13 (emphases added). By contrast, Plaintiffs directed the emails. *Id.* ¶¶ 20-21. This is all the clearer because Plaintiffs allege that they—and not beehiiv—identified the recipients of the emails in question. *Id.* ¶¶ 25-26 ("Plaintiffs uploaded lists of 247,000 and 170,000 recipients to Defendant beehiiv's system."). beehiiv thus plainly provided the automatic technical process on which the emails were transmitted, "for which another person [Plaintiffs] has identified the recipients or provided

the recipient addresses." 15 U.S.C. § 7702(15). Because beehiiv did not initiate the emails, § 7704(a)(3)(A) imposes no liability on it and the FDUTPA claim should be dismissed.

2. *Plaintiffs do not plausibly allege that the emails they initiated using beehiiv contained faulty unsubscribe links*

Even if beehiiv were an initiator (it is not), the FAC does not plead a violation of § 7704(a)(3)(A) by beehiiv. That provision permits compliance through either "a functioning return electronic mail address or other Internet-based mechanism." Plaintiffs allege only that unsubscribe links were defective without alleging the absence of a functioning return email address. Nor do they identify any recipient who attempted to unsubscribe and was unable to do so. FAC ¶¶ 38–40. Instead, Plaintiffs simply assume that the unsubscribe link stopped working based on beehiiv's alleged failure to share unsubscribe data. *See id.* ¶ 34. That does not plausibly allege a statutory violation.

Even if the emails did not comply with CAN-SPAM, however, that would be Plaintiffs' doing. Section 7704(a)(3)(A) applies only to "commercial electronic mail messages," emails where the primary purpose is the commercial advertisement or promotion of a commercial product or service. 15 U.S.C. § 7702(2)(A). As discussed above, beehiiv's Terms prohibited customers from using the platform to send advertising, promotional, and commercial emails. *See supra* at 12. beehiiv cannot be held liable based on CAN-SPAM when beehiiv barred Plaintiffs from using its service to send commercial emails under CAN-SPAM.

3. *CAN-SPAM does not require maintaining unsubscribe data*

Plaintiffs additionally appear to argue that beehiiv violated email marketing law by not providing unsubscribe data to Plaintiff. FAC ¶ 35. But as Judge Torres observed, FDUTPA "imposes no obligation to retain anything." Order Denying Remand at 18. Although the statute imposes certain obligations concerning opt-out mechanisms and honoring opt-out requests,

Plaintiffs have not identified (and cannot identify) any provision requiring beehiiv to preserve or provide the records they demand. Nor can FDUTPA supply that missing obligation where the asserted duty derives exclusively from federal email marketing law. *See* 15 U.S.C. § 7707(b)(1). The FDUTPA claim fails.

## IV. <u>**Plaintiffs' FDUTPA Claim Is Preempted by CAN-SPAM**</u>

Judge Torres's remand order reinforces why Plaintiffs' FDUTPA claim is preempted by CAN-SPAM. As the Court recognized, Plaintiffs "have attempted to plead a CAN-SPAM Act case as a FDUTPA case." Order Denying Remand at 17. The Court explained that FDUTPA does not impose the unsubscribe, opt-out, or recordkeeping obligations Plaintiffs seek to enforce. *Id*. at 18–20. Rather, those obligations derive, if at all, from CAN-SPAM, and Plaintiffs' purported FDUTPA violations are "disguised federal obligations governing commercial email marketing." *Id*. at 26. Although the Court did not reach the merits of preemption, its analysis confirms that Plaintiffs are attempting to use state law to enforce federal requirements while circumventing CAN-SPAM's limitations on private enforcement. That effort fails for two independent reasons: CAN-SPAM does not authorize Plaintiffs to bring a private action to enforce these requirements, and its express preemption provision bars Plaintiffs from imposing those same requirements through FDUTPA.

First, CAN-SPAM does not contain a general private right of action to enforce its requirements. *See* 15 U.S.C. § 7706(g). Civil actions are limited to federal and state entities agencies and state attorneys general, officials, and agencies.[5] *Id.* Plaintiffs cannot circumvent Congress's limit on private enforcement by recasting the same conduct as a FDUTPA claim.

---

[5] The principal exception is ironically internet service providers like beehiiv, who can initiate suit against customers who send spam and adversely affect the provider. *See* 15 U.S.C. § 7706(g).

Second, to the extent Plaintiffs argue that CAN-SPAM's provisions regarding unsubscribe mechanisms were incorporated into FDUTPA, any such FDUTPA claim would be preempted. *See* 15 U.S.C. § 7707(b). CAN-SPAM's preemption provision is broadly construed. Both the Fourth and Ninth Circuits have concluded that a plaintiff's state unfair and deceptive practices claims failed as a matter of law because CAN-SPAM preempts state regulation of commercial emails. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353 n.1 (4th Cir. 2006) (holding that because of CAN-SPAM preemption, "the alleged violations cannot give rise to further claims under the Oklahoma Consumer Protection Act."); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009) (same, as to claim under the Washington Consumer Protection Act). Here, Plaintiffs argue that FDUTPA incorporates and makes actionable violations of CAN-SPAM, but this cannot be. A FDUTPA requirement that concerned unsubscribe mechanisms within commercial emails would clearly fall in the heartland of CAN-SPAM's preemption provision. Nor would Plaintiffs' FDUTPA claim fit within the falsity and deception carveout, because Plaintiffs do not allege falsity or deception in "any portion of" the emails themselves. 15 U.S.C. § 7707(b)(1).

Lastly, Plaintiffs' claim does not escape preemption under 15 U.S.C. § 7707(b)(2). While CAN-SPAM does not preempt all claims under FDUTPA generally, it preempts a FDUTPA claim like Plaintiffs' that is not grounded in any independent allegation of deceptive or unfair practices, and attempts to merely dress up a CAN-SPAM violation as a state law issue. The FDUTPA claim is therefore preempted.

## V. <u>Plaintiffs Fail to State Negligence, Injunctive Relief, or Declaratory Judgment Claims</u>

Plaintiffs' negligence claim fails for multiple, independent reasons. First, Plaintiffs' negligence claim is barred by the two-year statute of limitations. Fla. Stat. § 95.11(5)(a).

Second, Plaintiffs identify no legal duty owed by beehiiv to Plaintiffs. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A duty may arise from "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). The FAC merely asserts that such a duty existed, FAC ¶ 81, without identifying any statute, precedent, or factual basis establishing it. This bare assertion does not state a claim for relief. *See, e.g.*, *N. River Ins. Co. v. Hillstone Rest. Grp., Inc.*, 2024 WL 6967166, at *2 (S.D. Fla. Nov. 22, 2024). Indeed, beehiiv's Terms expressly prohibited the commercial activity at issue.[6] Third, Plaintiffs identify no duty independent of the parties' contractual relationship. Plaintiffs' negligence claim concerns the design and operation of the very service beehiiv agreed to provide, and therefore fails under Florida's independent tort doctrine—which instructs that a tort claim cannot proceed if the defendant committed no breach of a duty independent of its contractual obligations. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 714 F.3d 1253, 1257 (11th Cir. 2013). Fourth, Plaintiffs do not plausibly allege causation because Rossdale controlled the commercial emails and could have provided an alternative opt-out mechanism. *See supra* at 13-15. The negligence claim should be dismissed.

Plaintiffs' standalone claim for injunctive relief also fails because an injunction is a remedy, not an independent cause of action. *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). Similarly, Plaintiffs' declaratory judgment claim depends entirely on the

---

[6] The FAC also alleges that beehiiv "creat[ed] an unreasonably dangerous and hazardous condition." FAC ¶ 82. But Plaintiffs identify no dangerous condition beyond the allegedly defective unsubscribe mechanism, which does not plausibly support that characterization.

alleged FDUTPA violation, FAC ¶¶ 89-90, and fails because Plaintiffs have not plausibly alleged any such violation. *See* FLA. STAT. § 501.211.

## VI. None of the Claims Are Viable Against Krenitsyn, Who Was Fraudulently Joined and Did Not Work at beehiiv During the Relevant Time

Plaintiffs' claims against Krenitsyn should additionally be dismissed because he did not even work at beehiiv during the relevant time, and thus did not directly participate in the alleged violations. As a matter of logic and precedent, "[i]t has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *SIG, Inc. v. AT & T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1195-96 (S.D. Fla. 2013) (quoting *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. Dist. Ct. App. 2008)). Here, the FAC is limited to conclusory assertions about Krenitsyn's job title. FAC ¶¶ 18, 36, 59, 73. That is insufficient. *See* Order Denying Remand at 12 ("Plaintiffs have not alleged facts demonstrating any personal involvement by Krenitsyn in the alleged violations."); *id.* at 16 ("There are no allegations of a specific failure or act on Krenitsyn's part that could lead to individual liability under FDUTPA.").

In fact, it would have been impossible for Krenitsyn to directly participate in the alleged conduct because he did not join beehiiv until March 29, 2025—nearly sixteen months after the September to December 2023 events. *See* RJN Ex. B (more complete version of FAC Exhibit F). This is clearly shown in the LinkedIn profile that Plaintiffs incorporated into the FAC as Exhibit F. The Exhibit, however, was conspicuously cropped right above the portion plainly stating he was not employed by beehiiv until 2025. FAC Ex. F. The Court should consider the fuller profile and dismiss the claims against Krenitsyn. *See* RJN ¶¶ 5-6, 13-15. Clearly

"Krenitsyn could not have participated in conduct that occurred before his involvement with the company." Order Denying Remand at 14.

Krenitsyn should have never been named in this action. At the time of filing, Plaintiffs' counsel undisputedly had seen Krenitsyn's LinkedIn profile and was on notice of his lack of involvement. The FAC, in fact, seems to concede this knowledge in paragraph 36, which acknowledges Krenitsyn was not Chief of Staff "at all times relevant to this action." FAC ¶ 36. Plaintiffs nonetheless presented an incomplete copy of Krenitsyn's LinkedIn profile and continued to paint the picture that Krenitsyn was at fault for failing to take steps as to Rossdale's account in 2023—steps Krenitsyn could not have taken because he did not work at beehiiv at the time. *See* Decl. of Susan Lunden in Supp. of Reply in Supp. of Mot. to Remand ¶¶ 9-15, ECF 25 (repeatedly asserting that "Krenitsyn failed" to take myriad actions in 2023 as to Rossdale's account). The Court should dismiss all claims against Krenitsyn with prejudice and permit beehiiv to seek appropriate sanctions, including attorney's fees and costs.

## CONCLUSION

For the above reasons, the Court should dismiss the First Amended Complaint with prejudice and permit beehiiv to seek attorney's fees and costs.

Date: October 28, 2026

*/s/ Sheri Pan*
Sheri Pan (*pro hac vice*)
Email: sheri@zwillgen.com

**ZWILLGEN LAW LLP**
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335

Kelsey Harclerode (Florida Bar No. 1048280)
Email: kelsey@zwillgen.com
Nury Siekkinen (Florida Bar No. 1015937)
Email: nury@zwillgen.com

**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

*Attorneys for Defendant*
*beehiiv Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on October 28, 2026, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Kelsey Harclerode*
Kelsey Harclerode

Jordan A. Dresnick (SBN 058529)
Law Offices of Jordan A. Dresnick
901 Brickell Key Blvd.
Miami, FL 33131
Tel: 786-220-8785
Email: JordanDresnick@gmail.com

Amado Alan Alvarez (SBN 746398)
THE ALVAREZ & FRIGER TRIAL LAW FIRM
66 West Flagler Street, 12th Floor
Miami, Florida 33130
Tel. 305-258-2739
Fax: 1-844-252-6329
Email: Alan@AlvarezFrigerTLF.com

Kenneth B. Schurr (SBN 876100)
Manno & Schurr PA
2030 S Douglas Road
Suite 105
Coral Gables, FL 33134
Tel: 305-441-9031
Fax: 786-221-2720
Email: kbsservice@schurrlaw.com, counselken@schurrlaw.com

*Attorneys for Plaintiffs*
*Miami Legal Resources, LLC and Rossdale CLE, Inc.*