**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NUMBER: 1:26-cv-20111-JB

Miami Legal Resources, LLC and

Rossdale CLE, Inc.,

Plaintiffs,

v.

beehiiv, Inc. and Dan Krenitsyn,

Defendants.

______________________________

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [DE 43]**

Plaintiffs' Miami Legal Resources, LLC and Rossdale CLE, Inc.'s (hereinafter "Plaintiffs"), by and through the undersigned counsel, hereby submits their response and opposition to Defendants'[1] Motion to Dismiss the Complaint [DE 43]. Plaintiffs' First Amended Complaint (hereinafter "Complaint") meets the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), this Court has jurisdiction over Defendants in this matter, Defendants were properly served, and the Complaint sufficiently alleges consumer harm and damage.

Accordingly, Defendants' motion should be denied.

[1] The Motion is labeled beehiiv's Motion to Dismiss, although it references arguments on behalf of both Defendants. Therefore, Plaintiffs treat the Motion as filed on behalf of Defendants beehiiv, Inc. and Dan Krenitsyn.

**I. Defendants' representation of the underlying facts is not correct and would not be a basis to grant a motion to dismiss with prejudice even if true**

As discussed in detail below, Defendants' Motion leads with a patently false narrative of Plaintiffs as fraudulent and greedy to distract from the detailed allegations of the Complaint and Defendants' own voluntarily admissions to this Court that Defendants violated the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat, § 501.204 (hereinafter "FUDTPA"). Defendants and their counsel know full well that at this procedural juncture, this Court's analysis is to test the four corners of the Complaint in the light most favorable to Plaintiffs.

Stated briefly, Plaintiffs have operated a joint business to provide legal training courses/CLE's to hundreds of thousands of judges and lawyers for nearly two decades. Defendants intentionally and freely chose to make numerous representations on their website to attract consumers like Plaintiffs, that Defendants' email newsletter distribution services are legal, effective, sensible, and approachable. Am. Compl. ¶¶ 13-17. In fact, most of the representations made by Defendants giving rise to this matter are still actively being used and published on Defendants' website as of the filing of this Opposition. beehiiv website (available at: https://www.beehiiv.com/newsletter-platform) (last accessed: Nov. 11, 2026).

Plaintiffs properly opened an account with Defendants and paid good money for Defendants to advertise Plaintiffs' CLE courses. Am. Compl. ¶¶ 19-22. Plaintiffs repeatedly asked Defendants for the return of Plaintiff's unsubscribe data – which lawfully belongs to Plaintiffs. Am. Compl. ¶¶ 61-64.

A company heralding itself as one of the largest and most successful email newsletter platforms, like Defendants, should comply with the most basic of regulations to (1) allow email recipients to unsubscribe (2) track unsubscribes, and (4) allow senders, like Plaintiffs, to have access to their unsubscribe data so as to comply with applicable email laws on future sends. Yet,

Defendants openly admit to this Court that they have **no** regard for "ensuring that beehiiv acts in accordance with legal requirements, including those related to email marketing and unsubscribe tracking." Decl. of Dan Krenitsyn, DE 1, at ¶ 5). This is remarkable.

Defendants admit to employing full-time employees in the State of Florida, having Floridians as customers, generating revenue from customers in Florida and sending hundreds of millions of emails to recipients in Florida, and even hosting Defendants' Chief Operating Officer in the State of Florida. *Id.* at ¶¶ 7-8; Vu Ha Nguen Declaration, DE 43-1 at ¶ 10. Defendants are admittedly doing business in Florida, yet simultaneously admit to failing to abide by the most basic set of laws and norms for sending out emails: allowing a Floridian to unsubscribe and allowing a sender to honor unsubscribe requests. Decl. of Dan Krenitsyn, DE 1, at ¶ 5). Contrary to Defendants' attempts to portray Plaintiffs as the villains, Plaintiffs' only request to Defendants before being forced to file this suit was for their lawfully entitled unsubscribe data in order for Plaintiffs to continue operating legally. *See, e.g.,* Am. Complt. ¶¶ 61-64.

In September 2023, Plaintiffs registered an account with Defendants for Defendants to distribute Plaintiffs' newsletters to 417,000 of Plaintiffs' recipients. *Id.* at ¶¶ 19 to 26. The Amended Complaint details the manner by Defendants ignored and violated FDUTPA by engaging in an unfair and deceptive trade practice that (1) failed to include working unsubscribe links in the millions of emails that Defendants distributed to Plaintiffs; recipients and (2) repeatedly failed to provide Plaintiffs with the lawfully required unsubscribe data requested numerous times by Plaintiffs. Am. Compl. ¶¶ 28-41; 48-50; 61-64.

Moreover, Defendants failed to maintain, store, and/or preserve the unsubscribe data from the newsletter that Defendants were paid to distribute to Plaintiff's 417,000 recipients. Am. Compl. 48-64. By failing to track and maintain unsubscribe data, Defendants violated FDUPTA

*per* se. *Id*. Defendants are strictly liable for the negligent design of Defendants' system and the *per se* violations of Florida law – with each violation providing a statutorily defined damage amount. Am. Compl. ¶¶ 65-80.

And although the timeline of the filings below and the amount at issue have no effect on the Motion to Dismiss, Defendants curiously raised both to sow distraction and suggest malfeasance on Plaintiffs' part. Not only are Defendants incorrect in their theories, the timeline and the communications here confirm that Plaintiffs repeatedly asked Defendants for Plaintiffs' unsubscribe data, then filed the most minor of lawsuits (in Small Claims Court) to simply obtain the data when Defendants refused. After a full year of litigation, Defendants have still refused to simply give Plaintiffs the unsubscribe data of Plaintiffs' recipients.

**II. The claims in the Complaint are sufficiently stated.**

Defendants move to dismiss the Complaint for purported (a) Failure to Serve Defendants, (b) Lack of Personal Jurisdiction, (c) Failure to State a Cause of Action; and (d) being time barred or because Defendants allegedly did not need to adhere to Florida in mailing Floridians tens of millions of times. In support of their Motion, Defendants argue that the Complaint lacks, *inter alia*, a definition of deception; lacks any example of injury; and lacks a factual basis. Each is addressed below.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration*

*Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.Supp.2d 1349, 1353 (S.D. Fla. 2009).

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Supreme Court has explained that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *accord Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Epos Tech*., 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the Federal Rules embody "notice pleading" and require only a concise statement of the claim, rather than evidentiary facts as to every allegation, like fraud. Accordingly, Defendants' Motion would be considered properly filed only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for 'lack of detail.'" *Epos Tech*., 636 F.

Supp. 2d at 63 (citations omitted). The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 512.

To overcome a Rule 12(b)(6) motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "need not contain 'detailed factual allegations'"; the allegations need only "'raise a right to relief above the speculative level.'" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). In ruling on a Rule 12(b)(6) motion, the Court "take[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. See Twombly, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc*., 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in

the complaint and the attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). Here, the Complaint is not unintelligible or confusing and does not violate Federal Rule of Civil Procedure 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint specifically identifies the actions of Defendants and how those actions are wrongful, including Defendants' fraud and/or deception. The Complaint also clearly puts Defendants on fair notice of the charges against them.

## III. Defendants were Properly Served and Dismissal with Prejudice Is Not Appropriate Remedy Even if Defendants Were Not Served

This case initially involved a claim for less than $8,000 and was therefore filed in the Small Claims Division of the 11th Judicial Circuit in and for Miami-Dade County, Florida. Compl. ¶ 3. Because the matter was *then* properly filed as a Florida Small Claims case, the Florida Small Claims Rules applied and were followed by Plaintiff. In particular, Defendant beehiiv is not registered with the Florida Secretary of State and does not list a registered agent. Therefore, Plaintiff was lawfully able to utilize substituted service on the Florida Secretary of State pursuant to Fla. Stat. 48.161. DE 1. After the Florida Secretary of State accepted service, Plaintiffs' counsel mailed a courtesy letter to Defendant beehiiv by registered United States Postal Service to further provide notice. DE 1; *see also* Fla. Sm. Cl. R. 7.070. Plaintiffs also adhered to the Florida Small Claims Rules to obtain a summons for Defendant Dan Krenitsyn. Fla. Sm. Cl. R. 7.070; DE 1. Defendant Dan Krenitsyn is well aware of this matter, as he has voluntarily appeared, retained counsel, and even submitted a Declaration to this Court. DE 1.

Even if Defendants were not served, dismissal with prejudice is not the appropriate remedy. The 11th Circuit has held that "dismissal with prejudice is a drastic sanction that may be imposed only upon finding a clear pattern of delay or willful contempt <u>and</u> lesser sanctions

would not suffice." *Turner v. United States*, 203 Fed. Appx. 952, 954 (11th Cir. 2006) (quoting *Betty K. Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1340 (11th Cir. 2005) (emphasis in original)). Defendants here have actual knowledge of this matter and would suffer no prejudice of the Court were to find that one or both Defendants had not yet been served and if leave were granted for Plaintiff to serve. Judge Cohn held in *Linda de Luca v. Michael Chertoff,* CASE NO. 06-61465-CIV-COHN/SNOW (S.D. FL. April 4, 2027), "in light of the fact that the Defendant has knowledge of the action and was not unduly prejudiced by the defects in service, the improper service can be remedied by providing Plaintiff reasonable time to serve Defendant in accordance with Rule 4." Plaintiffs would seek leave to serve if the Court considers that either or both Defendants have not yet been served.

**IV. The Court has personal jurisdiction over both Defendants under the Florida-Long Arm Statute and Defendants' minimum contacts in Florida.**

This Court has personal jurisdiction over both Defendants in this matter – Defendant beehiiv is a foreign corporation admittedly doing business in Florida, subject to the Florida Long-Arm Statute, and Defendant Dan Krenitsyn, admittedly has been a citizen of the State of Florida at all times relevant to this action. Am. Complt. ¶¶ 5; Decl. of Dan Krenitsyn, DE 1, at ¶ 5. Defendants' Motion to Dismiss misconstrues 11th Circuit precedent regarding the Florida Long-Arm Statue and also attempts to argues that Defendant beehiiv's hundreds of millions of emails sent to Florida annually and millions of dollars of revenue from Florida do not constitute doing business in Florda.

The Supreme Court has held that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Baumann*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). A federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant.

*See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See id*. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See id*.

The Complaint sets forth the following allegations in support of the exercise of personal jurisdiction over Defendants pursuant to the Florida Long-Arm Statute:

- Defendants sent emails to Plaintiffs knowing that the Plaintiff is located in Miami-Dade County, Florida. Am. Complt. ¶ 5.
- Defendants' tortious in Florida has caused material damages in the State of Florida. Am. Complt. ¶¶ 5, 36-63.
- Defendants' website is accessible from the State of Florida. Am. Complt. ¶¶ 5-18.
- Defendants represented their services to comply with and meet the standards required to be lawful under Florida law. *Id*. at ¶¶ 5-42.
- The large number of business operations that Defendants maintain in Florida, coupled with the employees of Defendants in the State of Florida, and the volume of business transacted by Defendants in the State of Florida qualify Defendants as "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state [Florida];" Am. Complt. ¶ 5 (citing Florida Long-Arm Statute, Fla. Stat. §48.193(1)(a)(1)).
- Defendants engaged in trade and commerce in the State of Florida within the meaning of Fla. Stat. § 501.203(8). Am. Compl. ¶ 65.

Under the first step of the personal jurisdiction analysis, the Court begins with §

48.193(1)(a)(2) of Florida's long-arm statute. *Scultpchair*, 94 F.3d at 626. ("First we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction."). The statute provides that a non-resident defendant, like beehiiv here, is subject to personal jurisdiction for any cause of action "arising from" a "tortious act" committed in Florida. The 11th Circuit has consistently held that, under Florida law, a non-resident defendant commits a tortious act in Florida by performing an act outside the state that causes injury within Florida. *See Pos ner v. Essex Ins. Co*., 178 F.3d 1209, 1216 (11th Cir. 1999); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283-84 (11th Cir. 2008); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). A nonresident defendant need not be physically present in Florida to commit a tortious act there. *See Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020); *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). *See Internet Solutions Corp*., 39 So.3d at 1215. *See also Wendt*, 822 So.2d at 1260 ("'[C]ommitting a tortious act in Florida…can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida."); *Rennaissance Health Pub., LLC v. Resveratol Partners, LLC*, 982 So. 2d 739, 742 (Fla. 4th DCA 2008) ("An interactive website which allows a defendant to enter into contracts to sell products to Florida residents, and which 'involve[s] the knowing and repeated trans mission of computer files over the internet,' may support a finding of personal jurisdiction.").

As detailed above, Defendant beehiiv has reached into the State of Florida to transact business not only with Plaintiff, but admittedly with a number of other Florida customers. Declaration of Vu Ha Nguyen, DE 43-1, ¶ 10. Beehiiv has admittedly sent 420,000,000 (420 million) emails into the State of Florida,[2] and has generated $1.61 million in revenue from the

[2] beehiiv claims that it has sent out 60 billion emails. beehiiv Statistics (accessible at: https://www.beehiiv.com/blog/beehiiv-for-enterprise-2026?srsltid=AYCX9vJr22P0XE07jaGeXaLaBP2qpeeiWz7Kksb9Q1nDT22tA8GeE4Dq) (last accessed: Nov. 11, 2026). beehiiv's Controller, Vu Ha Nguyen (who swears to this Court to be familiar with beehiiv's corporate

State of Florida over the past two years alone.[3] beehiiv's own admissions of sending 420 million emails into Florida and generating nearly two million dollars in revenue over the last two years alone defy beehiiv's bare-bones claim against being found engaged in business in Florida. Here, the allegations in the Complaint support the exercise of the Florida Long-Arm Statute against both Defendants.

Once the Court determines that the Florida Long-Arm Statute provides a basis for jurisdiction, the Court next determine "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Sculptchair*, 94 F.3d at 626 (quoting and citing *Robinson v. Giarmarco Bill, P.C.*, 74 *F*.3d 253, 256 (11th Cir. 1996) (in turn quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted)).

In specific jurisdiction cases like this one, the Court determines whether (1) the plaintiffs' claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355.

The first prong focuses on the "causal relationship between the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotation marks

---

structure, operations, technical infrastructure, customer base, and business activities) swears that approximately 7% of beehiiv's revenue comes from the State of Forida. Declaration of Vu Ha Nguyen, DE 32-1, ¶ 10 This would suggest that 7% of the 60 billion emails were sent into the State of Florida.

[3] beehiiv claims that it has generated 23 million dollars in revenue over the past 24 months. beehiiv Statistics (accessible at: https://www.beehiiv.com/blog/beehiiv-for-enterprise-2026?srsltid=AYCX9vJr22P0XE07jaGeXaLaBP2qpeeiWz7Kksb9Q1nDT22tA8GeE4Dq) (last accessed: Nov. 11, 2026). beehiiv's Controller, Vu Ha Nguyen (who swears to this Court to be familiar with beehiiv's corporate structure, operations, technical infrastructure, customer base, and business activities) swears that approximately 7% of beehiiv's revenue comes from the State of Forida. Declaration of Vu Ha Nguyen, DE 32-1, ¶ 10. This would suggest that 7% of the 23 million dollars generated over the past 24 months include $1.61 million generated from the State of Florida.

omitted). Importantly, the Supreme Court recently rejected the very argument made in beehiiv's Motion that specific jurisdiction may attach only when the defendant's forum conduct directly gave rise to the plaintiff's claims. *See Ford Motor Co.*, 141 S. Ct. at 1026-27 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct."). The allegations of the Complaint – which Defendants have not (and cannot) deny, coupled with the sheer metrics of Defendants' engagement in Florida readily satisfy this first prong.

The second prong considers Defendants' minimum contacts with the State of Florida. The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiffs' cause of action; (2) involve some act by which the defendants purposefully availed themselves of the privileges of doing business within the forum; and (3) are such that the defendants should reasonably anticipate being haled into court in the forum. *See Louis Vuitton*, 736 F.3d at 1357. The Court considers individually or collectively, whether these contacts satisfy the relevant criteria. *See id.* In this case, Defendants' contacts with Florida create the claim; however, as noted above, Defendants' contacts with Florida need not necessarily give rise to the plaintiff's claim. *See Ford Motor Co.*, 141 S. Ct. at 1026-27. In *Louis Vuitton*, the mere use of an interactive website accessible from Florida and sale of goods or services into Florida satisfied the minimum contacts analysis in accordance with due process. 736 F.3d at 1357-58. Here, Defendants' admissions as to the hundreds of millions of emails sent by Defendants into Florida and the millions of revenue generate by Defendants in just the last few years, coupled with the allegations of the Complaint, meet this second prong.

The third and final prong considers "fair play and substantial justice," prong turns on (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the

plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Here, Defendants have not argued that they would be burdened by having to litigate the case in Florida, much less offered any evidence to that effect. *Accord Del Valle, et al. v. Trivago GmbH, et al.,* 56 F.4th 1265, 1277 (11th Cir. 2022). The other factors, moreover, support the exercise of personal jurisdiction. Florida has a strong interest in adjudicating this dispute given that the damages accrued in Florida, the witnesses and evidence are located in Florida, and Defendants' own Chief Operating Officer (and Co-Defendant in this case, Dan Krenitsyn) have lived and continue to live in Florida at all relevant times to this action. Plaintiffs, two Florida incorporated and based entities, have an interest in litigating this case in their chosen home forum. Florida has "significant interests at stake," including "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *Id*. (citing *Ford Motor Co*., 141 S. Ct. at 1030 (quoting *Burger King*, 471 U.S. at 473)) (cleaned up).

Defendants' Motion to Dismiss cites two cases to argue against the exercise of jurisdiction over non-resident Defendant beehiiv. The first case, *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) provides an example where the 11th Circuit reversed and remanded a trial court for not exercising jurisdiction over a non-resident defendant with relatively less contacts in Florida than Defendant beehiiv. In fact, in *Horizon Aggressive Growth*, the 11th Circuit based jurisdiction on a few, mere misrepresentations in phone communications into Florida. *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) is likewise inapplicable. In *RG Golf*, a Minnesota corporation sued another Minnesota corporation in federal court in Orlando, Florida premised on a trip made by certain executives of the parties to Florida. *Id*. Unlike the

allegations in the Complaint and Defendants' own admissions in the instant case before this Court, the Court in *RG Golf* lacked satisfaction of virtually all of the prongs of minimum contacts in Florida and damages caused in Florida, as well as the overarching interests in a Florida court adjudicating the matter.

Finally, as to Defendant Dan Krenitsyn, this Court has personal jurisdiction over its residents. Fed. R. Civ. P. 4(k)(1)(A). Defendant Krenitsyn admits to living in South Florida at all times relevant to this matter. Krenitsyn Declaration, DE 1, ¶¶ 4-5.

**V. The Complaint properly alleges three causes of action against Defendants.**

In the interest of economy of words, Plaintiffs will not copy each of the Complaint's numerous, detailed allegations against Defendants except to note that the 90-paragraph, 29-page Complaint (with exhibits) more than meets the requirements under Fed. R. Civ. P. 8(a)(2) to show that Plaintiffs are entitled to relief for violations of FDUPTA, Negligence, Injunctive Relief, and Declaratory Judgment. Afterall, this Complaint was filed in the Florida Small Claims Court. Now that Defendants have asked to litigate this matter in the South District of Florida, Plaintiffs respectfully seek leave to amend to add greater detail both as the allegations on the causes of action and the jurisdictional basis for this Court should the Court consider any portion of the Complaint to be lacking. This is detailed below.

**VI. The Terms of Use filed by Defendants as the operative contract were NOT the Terms to which the Parties here agreed**

Defendants filed a set of Terms and Conditions as DE44-1, claiming the Terms to be those entered into by the Parties. Curiously, Defendants failed to include any sworn affidavit or declaration attesting to these Terms as being the operative contract between the parties. Moreover, the Terms of Use filed as DE44-1 were NOT the Terms agreed to by the Parties. Am. Compl. ¶ 24; Lunden Declaration, **Exhibit A**, at ¶ 7. This Court has already struck Defendants'

improper filing of the purported Terms of Use in this Court's Order of Nov. 3, 2026 [DE 45].

**VII. The Complaint alleges harm.**

As stated above, the Complaint alleges Plaintiffs' damages harm and injury in paragraphs 5, 6, 39, 44, 71, 77, 83.

**VIII. CAN-SPAM is not a cause of action in this matter and does not Preempt FDUPTA.**

Defendants next attack Plaintiffs' purported allegations involving the CAN-SPAM Act of 2003 (hereinafter "CAN-SPAM"). The Motion to Dismiss raises the CAN-SPAM Act of 2003 a remarkable 28 times. Yet, the Complaint **never once** raises, cites, notes, or otherwise refers to CAN-SPAM. And, CAN-SPAM is **not** a cause of action in this matter. It is black-letter law that "the plaintiff is the master of the complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Defendant's Motion to Dismiss attempts to rewrite the Complaint.

Defendants also attempt to throw preemption into the mix. Yet, Defendants are unable to cite a **single** case for the allegation that FDUPTA is preempted by CAN-SPAM. Neither the *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) case nor the *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009) case involve FDUPTA or even Florida law. Those cases involve Oklahoma and California state laws, respectively, and wholly distinct allegations not close to those before this Court. Preemption *might* apply under the Supremacy Clause if a particular state law went further than or differed from an applicable federal law. U.S. Const. art. VI, cl. 2. Here, the allegations of the Complaint allege that FDUPTA simply makes other prevailing consumer protection statutes, like federal protections. applicable in Florida. Am. Complt, ¶ 10. FDUPTA would not be preempted as requiring more than an applicable federal law because FDUPTA merely echoes federal law.

Consistent with that command, the Supreme Court has long recognized that state laws

that **conflict** with federal law are "without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). Here, there is no conflict, and hence no preemption, because FDUPTA merely parrots any federal law that protects consumers. Indeed, that is why Defendants were unable to cite a single case in this District or the 11th Circuit finding FDUPTA to be preempted. *See, e.g., Marrache v. Bacardi U.S.A., Inc.*, No. 20-10677 (11th Cir. Nov. 8, 2021) (FDUPTA is **not** preempted).

Moreover, Defendants gloss over the express words of CAN-SPAM, in which Congress specifically wrote into law that CAN-SPAM does **not** preempt states law outlawing fraud and/or deception. 15 U.S.C. § 7707(b). Afterall, the Complaint here is brought under the Florida Unfair and **Deceptive** Trade Practices Act. The allegations of the Complaint make clear that Defendants' actions are deceptive in failing to allow recipients to unsubscribe, track unsubscribe requests, and/or make unsubscribe data available to Plaintiffs. Am. Compl. ¶¶ 26-42.

## IX. Plaintiff did timely meet the statute of limitations and more importantly, Defendants' actions are subject to the continuing violation doctrine

Defendants' next argument rests on a statute of limitations claim; however, Defendants wholly overlook both the timing of the filing of the underlying lawsuit and as well as continuing violation doctrine. The instant lawsuit before this Court was filed in the Florida Small Claims Court on December 14, 2025. DE 1. This is within the two-year statute of limitations for the misconduct described in the removed Complaint that is detailed within the preceding 24 months. Second, the Complaint described the continued violations of Defendants. Am. Compl. ¶¶ 61-64. "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law

occur within the statutory period. *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 *F.*3d 1208, 1221 (11th Cir. 2001). If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448–49 (11th Cir. 1993). This Court looks to the four corners of the complaint in the light most favorable to Plaintiffs at this juncture. The Complaint makes clear that Defendants have continued to act negligently well after 2023, and certainly within the timely filing of this matter in December 2025.

**X. In reading the Complaint in the light most favorable to Plaintiffs, viable claims are properly asserted to Defendant Dan Krenitsyn**

Defendants' final argument asks this Court to dismiss Defendant Krenitsyn based on his LinkedIn profile. As a starter, this Court's Order of Nov 3, 2026 [DE 45] already struck Defendants' filing of the LinkedIn profile. Moreover, the Complaint details Defendant Krenitsyn's personal liability in this matter. *See*, *e.g.,* Am. Complt. ¶¶ 4, 18, 36, 59, 73. Defendant Krenitsyn's own admissions confirm that he was employed full time at Defendant beehiiv during the timeframe at issue in this matter. *Id*.

**XI. Plaintiffs Seek Leave to Amend if the Court Grants the Motion to Dismiss**

For the numerous factual, legal, and procedural reasons detailed here, this Honorable Court should deny the Motion to Dismiss. To the extent that this Court should grant the Motion to Dismiss, Plaintiffs respectfully request leave to amend the complaint to provide further clarity to the allegations involving Defendants' misconduct here. Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party seeking to amend its complaint more than twenty-one days after the defendant has served a responsive pleading or a motion to dismiss may do so only with the other party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Leave shall be freely given

when justice so requires. *Id.*

Rule 15(a) reflects a policy of "liberally permitting amendments" and absent a "substantial reason to deny leave to amend" a plaintiff's motion to amend should be granted. It is well settled law that a leave to amend should be liberally granted. Fed. R. Civ. P. 15(2)("The court should freely give leave when justice so requires."). Leave should be denied only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). None are present here. Moreover, "leave to amend should not be denied on the ground of futility unless the proposed amendment is clearly insufficient or frivolous on its face." *Montes v. M & M Management Company*, No. 15-80142-CIV, 2023 WL 4889656, at *1 (S.D. Fla. May 12, 2015) (Marra, J.) (citing *Davis v. Piper Aircraft Corp*., 615 F.2d 606, 613 (4th Cir. 1980)).

## CONCLUSION

In short, the Complaint fully complies with the pleading requirements of Federal Rule of Civil Procedure 8(a) and provides Defendants fair notice of the charges against them and the grounds therefor. The Defendants were served. This Court has personal jurisdiction in this matter over Defendants. CAN-SPAM is not a cause of action here and does not preempt FDUPTA. Additionally, Plaintiffs have sufficiently alleged harm. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

By: /s/ Amado Alan Alvarez AMADO ALAN ALVAREZ
Florida Bar No. 746398
BOARD CERTIFIED CIVIL TRIAL LAWYER
THE ALVAREZ & FRIGER TRIAL LAW FIRM
The Concorde Office Tower
66 West Flagler Street, 12th Floor Miami, Florida 33130
Tel. (305) ALVAREZ [258-2739]
Fax: 1 (844) ALANFAX [252-6329]
Email: Alan@AlvarezFrigerTLF.com

By: /s/ Kenneth B. Schurr
Kenneth B. Schurr
2030 S. Douglas Road
Suite 105
Coral Gables, FL 33134
Tel.: 305-441-9031
Designated Service E-mail:
kbsservice@schurrlaw.com
counselken@schurrlaw.com

Law Offices of Jordan A. Dresnick, PLLC
901 Brickell Key Blvd.
Miami, FL 33146
Tel.: 786-220-8785

By: /s/ Jordan A. Dresnick
Jordan A. Dresnick
Florida Bar No. 058529
E-mail: JordanDresnick@gmail.com

Dated: November 11, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on November 11, 2026, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, via transmission of Notice of Electronic Filing generated by CM/ECF.

By: /s/ Kenneth B. Schurr
Kenneth B. Schurr
Florida Bar No. 876100

**Service List**

Nury Siekkinen
nury@zwillgen.com
Zwillgen PLLC
1900 M Street, NW Suite 250
Washington, DC 20036
Tel.: 202-296-3585
Counsel for Defendants beehiiv, Inc. and Dan Krenitsyn

Sheri Pan
sheri@zwillgen.com
Zwillgen PLLC
369 Pine Street, Suite 506
San Francisco, CA 94104
Tel.: 415-590-2335
Counsel for Defendants beehiiv, Inc. and Dan Krenitsyn

Kelsey Harclerode
kelsey@zwillgen.com
Zwillgen PLLC
1900 M Street, NW Suite 250
Washington, DC 20036
Tel.: 202-296-3585
Counsel for Defendants beehiiv, Inc. and Dan Krenitsyn

**CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that although not required here, counsel for the Plaintiff has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

By: /s/ Jordan A. Dresnick
Jordan A. Dresnick
Florida Bar No. 058529